J-S27040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN DAVIS, | |
| Appellant | No. 1360 MDA 2015 |

Appeal from the Judgment of Sentence June 10, 2015
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0001518-2014

BEFORE:  SHOGAN, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 25, 2016**

Appellant Sean Davis appeals the judgment of sentence entered on

June 10, 2015, by the Honorable Margaret Bisignani Moyle in the Court of

Common Pleas of Lackawanna County.  Following a review of the record, we

affirm.[1]

The trial court set forth the pertinent facts and procedural history

herein as follows:

> **I.    INTRODUCTION/PROCEDURAL HISTORY**

_____

[1] In their appellate briefs, the parties purport to appeal from the trial court's
Order entered on July 29, 2015, denying Appellant's post-sentence motions;
however, because an order denying post-sentence motions acts to finalize
the judgment of sentence for purposes of appeal, the appeal properly is
taken from the judgment of sentence, not the order denying the motions.
***Commonwealth v. Chamberlain***, 658 A.2d 395, 397 (Pa.Super. 1995).

*Former Justice specially assigned to the Superior Court.

[Appellant] has appealed various rulings made by this [c]ourt during the course of his trial, as a result of which, on April 1, 2015, he was convicted of one (1) count of Delivery of a Controlled Substance, (PA ST 35 P.S. § 780-113 clause 30) one (1) count of Criminal Use of a Communication Facility, (18 Pa.C.S.A. § 7501(a)) [and] one (1) count of Possession of a Controlled Substance (PA ST 35 P.S. § 780-113a clause 16).[2] On June 6, 2015 this court sentenced [Appellant] to an aggregate term of two years (2) to eight (8) years at a State Correctional Institute plus.

[Appellant] filed various post-sentence motions, which included a Motion for Judgment of Acquittal and/or New Trial and Motion for Reconsideration of Sentence. This Court issued an Order on July 29, 2015[,] denying [Appellant's] post-sentence motions. [Appellant] filed a Notice of Appeal on August 5, 2015. This Court issued an Order on August 7, 2015, directing [Appellant] to file a Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1025(b) [sic]. [Appellant] issued his Concise Statement of Matters Complained of on Appeal on September 23, 2015. The Court will address each issue per Pa.R.A.P. 1025(a) [sic].

## II.   <u>FACTUAL HISTORY</u>

The evidence at trial demonstrated as follows:

On May 20, 2014[,] Jennifer Deninno, who had been arrested that same day for possession of drug paraphernalia, told Scranton Police Officer Jessica Dinning that she could set up a drug transaction between herself and a man she knew as "Snow." (N.T. 4/1/15 at pg. 75-77). Ms. Deninno gave a description of "Snow" to Officer Dinning and then sent a text message to "Snow" to which "Snow" responded by calling Ms. Deninno's phone. (N.T. 4/1/15 at pg. 78-82). Through this communication between "Snow" and Ms. Deninno, it was established that the pair would meet at the Turkey Hill across from Scranton High School in order for Ms. Deninno to purchase a quantity of cocaine. (N.T. 4/1/15 at pg. 81). Ms. Deninno was then thoroughly searched by Officer Dinning and driven to the

---

[2] Appellant also was convicted of one count of Use/Possession of Drug Paraphernalia. 35 P.S. § 780-113(a)(32).

meeting location in the Officer's vehicle. (N.T. 4/1/15 at pg. 83).

Upon arrival at Turkey Hill, Ms. Deninno exited Officer Dinning's vehicle and walked over to talk to "Snow." (N.T. 4/1/15 at pg. 87). At one point Ms. Deninno returned to Officer Dinning's vehicle to obtain a cigarette for "Snow" before eventually returning, having obtained $50 worth of crack cocaine. (N.T. 4/1/15 at pg. 89-90). Ms. Deninno immediately handed the cocaine over to Officer Dinning and Officer Dinning performed another search of Ms. Deninno's person. (N.T. 4/1/15 at pg 92). This entire transaction was photographed by other members of Officer Dinning's Unit, with numerous photo's [sic] displayed to the Court and the jury. (N.T. 4/1/15 at pg. 99). Officer Dinning then drove herself and Ms. Deninno back to the Scranton Police Station where Ms. Deninno looked at pictures in an effort to ascertain the true identity of "Snow." Through this examination, "Snow" was determined to be [Appellant]. (N.T. 4/1/115 [sic] at pg. 109-111).

Once back at the police station, Officer Dinning attempted to have Ms. Deninno contact [Appellant] again and it was learned that his phone number was no longer active. (N.T. 4/1/15 at pg. 137-138). Officer Dinning filed an arrest warrant for [Appellant] on July 1, 2014. (N.T. 4/1/15 at [pg.] 144). On July 8, 2014, Officer Dinning saw [Appellant] entering the same Turkey Hill store. (N.T. 4/1/15 at pg. 145). Whereupon, Officer Dinning followed [Appellant] into the store and arrested him inside the men's room. (N.T. 4/1/15 at pg. 145).

Trial Court Opinion Pursuant to Pa.R.A.P. 1925(a), filed 1/19/16, at 1-3.

In his statement of matters complained of on appeal, Appellant raised thirteen (13) issues. In his appellate brief, Appellant presents the following nine (9) questions for our review:

A. Whether the trial court erred when it denied [ ] Appellant's motion for mistrial and his request to replace juror nine?

B. Whether the trial court erred when it denied Appellant's Pre-Trial Motion to Strike the Amended Information since the Commonwealth improperly sought to reinstitute previously withdrawn charges on the last business day before vior dire?

C.    Whether the trial court erred when it permitted, over objection, the introduction of any jailhouse recorded conversations between [ ] Appellant and his wife for lack of relevancy, for lack of improper foundation, and for failure to timely disclose a copy of the jailhouse telephone call in discovery until the last business day before *vior dire*?

D.    Whether the trial court erred when it allowed the Commonwealth, without notice to the Appellant, to introduce his statement concerning prior drug dealings, thereby depriving him of a fair trial?

E.    Whether the trial court erred when it denied [ ] Appellant's requested [sic] for Corrupt and Polluted Source Jury Instruction?

F.    Whether the trial court erred when it instructed the jury on constructive possession even though it was not identified in the Criminal Information?

G.    Whether the evidence was sufficient to support the convictions on all counts?

H.    Whether the verdicts were against the weight of the evidence?

I.    Whether the trial court erred when it failed to impose concurrent sentences since the convictions all arose out of the same criminal transaction and at the same time?

Brief of Appellant at 4-5.

In his first issue, Appellant argues the trial court erred in denying his motion for a mistrial due to a juror's misconduct for her failure to disclose her fixed opinion of Appellant's guilt and that all defendants are guilty. Brief of Appellant at 20-21. Our Supreme Court articulated the well-settled

standard of review of a trial court's decision not to grant a mistrial as follows:

> A trial court is required to grant a mistrial only where the alleged prejudicial event may reasonably be said to have deprived the defendant of a fair and impartial trial. It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Fortenbaugh*, 620 Pa. 483, 487, 69 A.3d 191, 193 (2013) (internal quotation marks and citations omitted). In addition, a trial court's decision as to whether or not to grant a mistrial should be given deference when the court personally had an opportunity to question and observe each juror and made a finding that he or she was credible. *Commonwealth v. McCloskey*, 835 A.2d 801, 811-812 (Pa.Super. 2003). Also, we assume a jury follows the law as properly instructed by the trial court. *Commonwealth v. Coon*, 26 A.3d 1159, 1166 (Pa.Super. 2011).

Herein, during a recess prior to deliberations, an alternate juror alerted the trial court's law clerk to possible juror misconduct. Specifically, the alternate juror explained that Juror 9 had made a statement that "I can never be a defense attorney," and in response to another juror's inquiry as

to why responded "Because everyone I'd be defending is guilty." N.T., 4/1/15, at 283-85. The alternate juror explained that the reaction of the other jurors who had heard the comment was "almost a unanimous response of disbelief of what was just said." *Id*. at 286. An on-the-record discussion with counsel ensued at which time defense counsel moved for a mistrial. *Id*. at 288. A sidebar discussion took place off the record following which the trial court proceeded to conduct an individual voir dire of each juror starting with Juror 1 in an effort to ascertain who had actually heard the statement and its effect upon him or her, if any. While some jurors indicated they had heard the remark, all of them testified under oath they could remain fair and impartial in their deliberations and would be able to follow any additional instruction from the court. *Id*. at 289-331.

When the trial court asked Juror 9 to explain the meaning behind her comment, she stated she jokingly had made the remark in the context of how difficult the legal profession is. *Id*. at 315-316. She further explained that she did not espouse the notion that all defendants are guilty and indicated her belief that one needs to be proven guilty before he or she can be considered so. *Id*. at 316-317. She assured the trial court that she had answered the questions regarding her partiality during voir dire correctly and sated "I'm listening to all of the facts. I'm listening to what is going on and I'm going to make my judgment by what goes on in that witness stand,

what's presented for both sides, and just go from there. It was just a joke."

*Id*. at 318.

Following additional argument and discussion with counsel on the record, the trial court denied defense counsel's request for a mistrial or in the alternative that Juror 9 be excused. Instead, the trial court provided the following curative instruction to the entire panel in open court:

> THE COURT: Ladies and gentlemen, please be seated. I asked you to come in here because I just wanted to say one final thing about this matter and then put this matter to rest. Okay.
> Now, you all know the reason for the individual questioning of the jurors. And it's unfortunate that the process takes a long time, but I'm required by law to speak to you each, individually. So, what I would like to do, now, is just advise you that, what I would like you to do is go back into the jury deliberation room, resume your deliberations, and to set aside the events of the individual questioning and the events of the conversation that lead to the individual questioning. Are you all able to do that?
> THE JURORS: Yes.
> THE COURT: Everyone is nodding in the affirmative. So, with that, I am going to send you, now, back into the jury deliberation room and I'm going to ask you to follow all of my instructions and deliberation fairly and impartially, considering only the evidence that was presented in the courtroom. Okay.

N.T., 4/1/15, at 339-340.

Upon our review of the record, we find the trial court did not abuse its discretion in deciding not to grant a mistrial or to remove Juror 9. As the aforementioned excerpts from the notes of testimony evince, there was no indication that Appellant had been deprived of his right to a fair and impartial trial as a result of the statement Juror 9 explained she had made in jest. While some jurors testified they never heard the comment, all of those

who did hear it stated it in no way affected their ability to be fair and impartial. Moreover, the trial court personally colloquied each juror regarding the remark and provided an additional instruction to disregard the statement and to deliberate fairly and impartially while considering only the evidence presented during trial. "When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, the law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 567 Pa. 272, 279, 786 A.2d 961, 971 (2001) (citation omitted), *cert. denied,* 537 U.S. 1187 (2003). As such, this claim is without merit.

Appellant next contends the trial court erred in denying his pretrial motion to strike the Amended Information wherein the Commonwealth sought to reinstitute charges it had previously withdrawn. Appellant submits Pa.R.Crim.P. 561(B)[3] is controlling herein; therefore, the Commonwealth

_____

[3] Entitled "Withdrawal of Charges by Attorney for the Commonwealth" this rule reads as follows:

> (A) After a case is held for court, at any time before the information is filed, the attorney for the Commonwealth may withdraw one or more charges by filing notice with the clerk of courts.
> (B) Upon the filing of the information, any charge not listed on the information shall be deemed withdrawn by the attorney for the Commonwealth.
> (C) In any case in which all the misdemeanor, felony, and murder charges are withdrawn pursuant to this rule, any remaining summary offenses shall be disposed of in the court of common pleas.

*(Footnote Continued Next Page)*

- 8 -

having voluntarily withdrawn charges should not be permitted to reinstitute the same charges without seeking leave of court before doing so, which he claims the Commonwealth failed to do.  Brief of Appellant at 28.

Pa.R.Crim.P. 564 provides that "[t]he court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564.  In **Commonwealth v. Sinclair**, 897 A.2d 1218 (Pa.Super. 2006), this Court stated that when presented with a challenge to the propriety of an amendment, we must consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defense to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.
>
> * * *
>
> In reviewing a grant to amend an information, [this] Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

Pa.R.Crim.P. 561.

- 9 -

have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id*. at 1221-22 (citations omitted). Relief is proper only where the amendment prejudices a defendant, and when determining whether an amendment results in prejudice, this Court considers:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Commonwealth v. Veon***, 109 A.3d 754, 768 (Pa.Super. 2015).

Appellant originally had been charged with four crimes: Delivery of a Controlled Substance, Criminal Use of a Communication Facility, Possession of a Controlled Substance and Possession of Drug Paraphernalia on July 1, 2014. All of these charges were waived to court at the time for Appellant's preliminary hearing. Thereafter, Appellant reached a plea agreement with the Commonwealth whereby Appellant was to plead guilty to one count of Delivery of a Controlled Substance and the Commonwealth would nolle pros the remaining charges. Reflecting this agreement, the Commonwealth filed a Criminal Information that contained the Delivery of a Controlled Substance charge, 35 P.S. § 780-113(a)(30) only. However, Appellant later decided not to enter a guilty plea and chose instead to proceed to trial. N.T.,

3/30/15 at 16-18. As such the Commonwealth filed its Amended Information on March 27, 2015, wherein it additionally charged Appellant with Criminal use of Communication Facility, 18 Pa.C.S.A. § 7512(a), Possession of a Controlled Substance, 35 P.S. § 780-113(a)(16), and Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32).

Contrary to Appellant's claims in his appellate brief, the Commonwealth sought and received permission from the trial court to amend the information. Prior to the start of trial, the trial court informed Appellant on the record that it had heard argument from both parties concerning whether the Commonwealth should be permitted to amend the information and indicated defense counsel had articulated "some very interesting arguments" on his behalf. N.T., 4/1/15, at 20-21; N.T., 3/30/15, at 10-18. After twice stating it would allow the Commonwealth to amend the information, the trial court informed Appellant of his right to be notified of the charges brought against him and that he had received such notice when the Amended Information was filed. N.T., 4/1/15, at 20-21. The trial court further found that the factual basis for each charge had been included in the affidavit of probable cause and the criminal complaint which placed Appellant on notice from the outset of the proceeding. *Id*. at 22.

Appellant also maintains he was prejudiced by the Commonwealth's filing of the Amended Information without seeking leave of the trial court to reinstate charges it voluntarily had withdrawn "upon its own election and

action." Brief of Appellant at 27-29. In addition, he baldly posits that, at a minimum, the charge of Criminal Use of Communication Facility set forth in the Amended Information introduced a different event. *Id*. at 30. To the contrary, the trial court found that as the Commonwealth filed its Amended Information listing all of the original charges arising out of the same factual situation only after Appellant decided not to plead guilty as per the terms of the plea bargain, Appellant was on notice of those charges. Trial Court Opinion, filed 1/19/16, at 13. After our review of the record, we agree.

In challenging the Commonwealth's filing of an Amended Information on the grounds that in doing so it effectively reinstituted charges it previously had withdrawn, Appellant misconstrues the purpose of a criminal information which is to apprise a defendant of the charges that have been brought against him so that he may prepare a proper defense. *Commonwealth v. Brown*, 556 Pa. 131, 135, 727 A.2d 541, 543 (1999). Moreover, Appellant chose not to take advantage of the trial court's offer to grant him a continuance and for a preliminary hearing on each charge to cure any perceived disadvantage caused to him by the Commonwealth's filing of an Amended Information. Appellant knew he initially was facing four charges arising out of the May 20, 2014, drug transaction with Ms. Deninno and agreed to plead guilty to one of them so that the others would be nolle prossed. As such, the Commonwealth withdrew the remaining charges pursuant to a plea agreement with which Appellant did not follow

through. The Amended Information simply placed Appellant back in the position he had been in before he entered into the agreement with the Commonwealth and the charges were reinstituted as a result of his own decision not to enter a guilty plea. On this issue, our Supreme Court has stated the following:

> When the defendant's own action prevents adjudication of the greater charges, it is absurd to suggest that, in the event the defendant reneges on his plea agreement, the government has relinquished its right to prosecute on those charges. The government simply has made a bargain which it is obligated to keep only so long as the defendant is willing to abide by its terms. When a defendant abrogates a plea agreement, he resumes his preagreement status, and the government may proceed on the original charges as if the agreement had never existed.
> ***
> A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain. When a defendant withdraws or successfully challenges his plea, the bargain is abrogated and he must be prepared to accept all of the consequences which the plea originally sought to avoid.

*Commonwealth v. Ward*, 493 Pa. 115, 124-25, 425 A.2d 401, 406 (1981) (citation omitted).

In addition, the amendments did not add any additional facts unknown to Appellant. Rather, they involved the "same basic elements and arose out of the same factual situation" as the original information. *See Sinclair*, 897 A.2d at 1222. Under such circumstances where there is no showing of prejudice, an amendment of an information on the day of trial to add an additional charge has been deemed to be proper. *Id*. at 1223. Furthermore, Appellant nowhere argues the Amended Information required him to change

his defense, and the trial court provided him with an opportunity for a continuance, which he declined to accept. As such, Appellant's contention he was prejudiced because he did not have adequate time to prepare for trial since the amendment occurred one business day before trial lacks merit.

Appellant's third issue questions whether the trial court erred when it permitted the jury to consider a telephone conversation between Appellant and his wife recorded when Appellant was incarcerated. Appellant maintains that although the telephone call was made on October 28, 2014, the transcript thereof was not provided to him until March 27, 2015, the last business day before trial and this late disclosure violated Pa.R.Crim.P. 573(D).[4] Also, Appellant asserts the content of the recorded conversation was neither relevant nor material to any allegation in the case and that it had not been properly authenticated. Brief of Appellant at 31-33, 35.

_____

[4] This Subsection provides:

> **(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

Pa.R.Crim.P. 573(D).

In reviewing a trial court's ruling on the admissibility of evidence, this Court's standard of review is one of deference. *Commonwealth v. Selenski*, 18 A.3d 1229, 1232 (Pa.Super. 2011), *vacated in part on other grounds*, 92 A.3d 766 (Pa. 2014). Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and the court's discretion will not be reversed absent a clear abuse of discretion. *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa.Super. 2005) (internal citations and quotation marks omitted), *appeal denied*, 928 A.2d 1289 (Pa. 2007). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id*. Furthermore, "if in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super. 2009) (citation omitted), *appeal denied*, 986 A.2d 150 (Pa. 2009).

Pertaining to the recorded jailhouse conversation between Appellant and his wife, the district attorney represented that he had listened to hours of recorded conversations in which Appellant had participated before he came upon the conversation at issue. He explained the moment he received the transcript of the call he turned it over to Appellant, and Appellant did not object to this representation. N.T., 3/30/15, at 7-8. In addition, the trial

court afforded Appellant an opportunity to request a continuance to further consider this evidence, and Appellant declined. *Id*. As such, the trial court did not abuse its discretion in finding the Commonwealth did not violate Pa.R.Crim.P. 573(D).

Appellant next challenges the relevancy of the contents of the recorded conversation. While the notes of testimony reflect a pre-recorded call was played in open court, *See* N.T., 4/1/15, at 215, the specific contents of that call was not transcribed as part of the trial transcript; however, a transcript of the conversation is contained in the certified record. Transcribed on March 27, 2015, by Nicole M. Avvisato of the Lackawanna County District Attorney's Office, the entirety of the conversation reads as follows:

> With: Sean Davis: S; Female
> S: I already wrote you and told you sh[--] going around the whole jail. This nig[--]'s telling.
> :That who?
> S: This nig[--] telling.
> : Hmm.
> S: Yeah. He's trying to get out of here. He's got his girl helping him.
> : Umm hmm.
> : That's crazy.
> S: Word. That's why I told you don't, you know; don't answer for her and sh[--] like that.
> S: Cause you never know.
> : I told her.
> S: I don't think it's his child's mother, though. I think it's his girlfriend. I'm not sure so just.
> : Um, yeah. You know his child's mother ain't doing that. She's got kids and all that.
> S: Yeah.

> : She ain't stupid.  And she ain't doing sh[--] like that for him.
> S: Yeah, right.
> : At least, I wouldn't think.
> S: Right.  That's what I'm saying.  We wouldn't think.  I wouldn't think a lot of sh[--] but-
> :What?
> S:  It is what it is.  I don't think he would, you know? Didn't think Jen.  Didn't think, you know what I mean? A lot of people.  And it is, so.  Thing is we need to stop not thinking and start thinking. Everybody telling. Fu[--] that. Anybody doing something wrong, eventually they're gonna be telling cause they're gonna get caught up, so.  That's what I don't like.  But, anyway. How was your day today?

Pa.R.E. 401(a) provides that relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence."  Pa.R.E. 401(a).  Prior to trial, the trial court explained the contents of the conversation at issue as follows:  "He's having a conversation with his wife about people who help themselves by cooperating with the police.  And he's explaining to her that this guy in jail is doing it now . . . he said he didn't think Jen, meaning – I take it to mean what the inference is, is he didn't think Jen was cooperating."  N.T., 4/1/15, at 15. The trial court reasoned that the Commonwealth was entitled to argue to the jury that it could infer something from Appellant's words, and Appellant could argue another inference from the statement was proper.  The court further reasoned that any challenge to such inferences would pertain to the weight of the evidence, not to its admissibility.  *Id*. at 17-19.

In response, Appellant indicated "I'll make the argument." Notwithstanding, prior to the Commonwealth's introduction of the recorded call into evidence at trial, Appellant objected only as to authentication, not to its relevancy. N.T. 4/1/15, at 209. As such, Appellant has waived this portion of his argument for failure to raise specific objection at trial. *See Commonwealth v. Baumhammers,* 599 Pa. 1, 41, 960 A.2d 59, 84 (2008) (stating "the absence of a specific contemporaneous objection renders the appellant's claim waived"); *See also Commonwealth v. Akbar,* 91 A.3d 227, 235 (Pa.Super. 2014) (reversed on other grounds) (finding that where defendant argued on appeal trial court admitted two audio tapes without giving him the opportunity to confront the individuals thereon in violation of the confrontation clause but at trial specifically objected only to admission of these tapes as hearsay defendant waived his confrontation clause argument on appeal).

Even if this issue were not waived, Appellant's claim is speculative at best. Appellant makes no proffer as to how the admission of this evidence prejudiced him. To the contrary, in his brief Appellant admits the call "merely indicated that the substance of Appellant's communications is consistent with his **innocence**, and his unhappiness with the confidential informant" and that "the substance of Appellant's statements and communications to his wife are essentially ambiguous statements." Brief of Appellant at 33 (emphasis added).

- 18 -

Finally, Appellant contends the Commonwealth failed to lay a proper foundation for or to authenticate the phone call before it was admitted into evidence at trial. A recorded telephone conversation must be properly authenticated before it is admitted into evidence. Pa.R.E. 901. Circumstantial evidence which tends to corroborate the identity of the sender, in addition to the confirmation that a number or address belonged to a particular person, is required for the authentication of electronic communications. **Commonwealth v. Koch**, 39 A.3d 996, 1005 (Pa.Super. 2011).

Herein, the Commonwealth presented the testimony of Captain Robert McGuire, the Intelligence Captain at the Lackawanna County Prison where Appellant had been incarcerated at the time the phone call had been recorded. Captain McGuire explained that he was a records custodian for purposes of phone calls at the prison and among his duties was answering subpoenas or other requests for inmate phone calls. N.T., 4/1/15, at 206, 211. Captain McGuire revealed that each prisoner is issued a pin number to be utilized when making phone calls and all phone calls are identified, stored and recorded with that number in the ordinary course of business at the prison. *Id*. at 207-210. Captain McGuire testified he is one of three individuals working inside the prison who can extract inmate phone calls, download them and burn them onto a disc at the request of attorneys. *Id*. at 207-08. Captain McGuire stated such conversations are recorded on a

system, and a company with whom the prison is contracted places all calls into a data base and maintains the information. *Id*. at 207.

After receiving a request for recordings made on a certain date or during a given period of time, Captain McGuire enters the date(s) along with the inmate's name, after which a list of call(s) that have been recorded and downloaded is revealed. Captain McGuire related that he then burns the telephone call(s) to a disc and presents the information to the requesting agency or attorney. *Id*. at 208. Captain McGuire identified the transcripts of phone calls Appellant made from July 25, 2014, to March 9, 2015, and two discs to which those calls had been burned. *Id*. at 211. Captain McGuire explained that every call is assigned a unique identification number, and he played for the jury the aforementioned excerpt from what he identified as call number 1389211 that had been made to phone number 570-604-7927 on October 28, 2014. *Id*. at 214-215. Captain McGuire also clarified that prior to each call, an inmate hears a recording that his or her phone call may be monitored and recorded. *Id*. at 219.

Appellant reasons that as the call was stored through a remote system and the Commonwealth did not call any witnesses from the outside company to lay a foundation for the call, there was insufficient evidence to show the call logs were authentic or that it was he speaking on the recording, as Captain McGuire did not personally maintain the recording or data storage devices and has no personal knowledge of Appellant's voice. Brief of

Appellant at 36. We disagree, for the testimony of Captain Mcguire is sufficient to establish a proper chain of custody for the recorded conversation and the identity of the speaker. *See Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381, 1387 (1980) (citations omitted) (stating "[e]very hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a reasonable inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court."). As such, we find the recorded conversation between Appellant and his wife was properly authenticated, and for all of the foregoing reasons, he is not entitled to relief on this issue.

Appellant next argues the trial court's permitting Officer Dinning to testify concerning a statement Appellant made about his prior drug dealing deprived him of his right to a fair trial. This argument stems from a response Officer Dinning provided on direct examination to a query as to whether she had ever discussed the nature of the charges against Appellant at the time of his arrest. Officer Dinning indicated that when she informed Appellant he was being arrested for, *inter alia*, delivery of crack cocaine, he replied: "It couldn't have been [me] because [I] haven't sold crack cocaine in a year." N.T., 4/1/15, at 146. Defense counsel did not object to this testimony at trial. *See id*.

Instead, on cross-examination, defense counsel specifically questioned Officer Dinning regarding her interaction with Appellant as follows:

> Defense Counsel: Okay. Now, did you advise him that he was under arrest for dealing drugs on May 20th?
> Officer Dinning: Yes.
> Defense Counsel: And he said to you, "that wasn't me. I haven't dealt drugs in over a year?"
> Officer Dinning. Yes.
> Defense Counsel: Okay. Now, so, he denied dealing drugs on May 20th?
> Officer Dinning. Yes. The dealing of the drugs on May 20th he had denied, but the previous ones he didn't.
> Defense Counsel: All right. Well, he wasn't being –whelp[sic], there was no investigation about anything he did a year ago. This was on May 20th?
> Officer Dinning: This was May 20th. That's what he had stated.
> Defense Counsel: Right. And he denied dealing drugs on May 20th?
> Officer Dinning: On that particular day, yes, he denied selling drugs.

N.T., 4/1/15, at 173-174.

It is well-settled that a defendant must make a timely and specific objection at trial or face waiver of her issue on appeal. Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Duffy*, 832 A.2d 1132 (Pa.Super. 2003), *appeal denied,* 577 Pa. 694, 845 A.2d 816 (2004) (holding party must make timely and specific objection at trial to preserve issue for appellate review). Consequently, Appellant has waived this allegation of trial court error on appeal. *Commonwealth v. Schoff*, 911 A.2d 147, 158 (2006).

Appellant's fifth and sixth questions pertain to the trial court's jury instructions. We review challenges to jury instructions as follows:

[O]ur scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*McManamon v. Washko*, 906 A.2d 1259, 1271 (Pa.Super. 2006) (citations omitted).

First, Appellant argues the trial court erred in denying his request for an instruction as to the credibility of an accomplice, otherwise known as a "corrupt and polluted source" instruction. In doing so, Appellant submits that Ms. Dennino was an accomplice as set forth in 18 Pa.C.S.A. § 306(b)(3)[5] who essentially solicited him to deliver a controlled substance,

---

[5] This Subsection states:

**(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:
***
(3) he is an accomplice of such other person in the commission of the offense.

*(Footnote Continued Next Page)*

- 23 -

and, as such, is legally accountable for his alleged illegal conduct. In support of this theory, Appellant relies upon this Court's decision in **Commonwealth v. Donohue**, 630 A.2d 1238 (Pa.Super. 1993) wherein we held the trial court had erred in ostensibly denying defense counsel's verbal request at sidebar for a corrupt source instruction where counsel failed to submit a written charge after the trial court concluded instructing the jury. *Id*. at 1246. Brief of Appellant at 41-42.

In the matter *sub judice*, prior to closing arguments, the trial court rejected Appellant's request that it provide a corrupt and polluted source instruction and in doing so explained:

> THE COURT: based on the case law that I've had the opportunity to review and the arguments of counsel—I did review your case on Monday and after and now I'm here with [**Commonwealth v. Donohue** 630 A.2d 1238 (Pa. Super. 1993)] in front of me. And I am looking at it trying to determine, factually, you know, if it's similar or not.
> I'm going to rule that the jury instructions for accomplice should not be given, so your request is denied.

N.T., 4/1/15, at 197-198. Counsel did not object or take exception to this ruling. Following the jury charge, the court inquired of counsel whether there were any "exceptions, corrections, or additions" to the charge; defense counsel responded in the negative.

*(Footnote Continued)* ───────────────

18 Pa.C.S.A. § 306(b)(3).

It is well-settled that to preserve a challenge to a particular jury instruction, a defendant must make a specific and timely objection, and his failure to do so results in waiver. **See** Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.") **see also** Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.A.P. 603(A), (B) (abrogating the necessity of taking an exception to a trial court's ruling during trial but specifically excluding issues related to jury instructions). Furthermore, a defendant generally waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary. **Commonwealth v. Charleston**, 16 A.3d 505, 527-28 (Pa.Super. 2011).

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue. This is particularly so where a judge believes that the charge adequately covered the proposed points. Moreover, charging requests are frequently submitted in advance of or during trial, with the relevance or necessity of a proposed instruction being of different significance as a result of subsequent events. **See generally United States v. Crowley**, 318 F.3d 401, 412-13

- 25 -

(2d Cir.2003) (emphasizing that "[t]he distinction between requests to charge and specific objections at a charging conference is significant[,]" and discussing the rationale for the specific objection requirement). Similarly, a judge's perspective concerning a particular point may be altered based upon a party's arguments. **See generally id**.

\*\*\*

We hold that under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

**Commonwealth v. Pressley**, 584 Pa. 624, 630-32, 887 A.2d 220, 224-25 (2005) (some citations and footnotes omitted). In light of the foregoing and after our review of the record, we conclude Appellant failed to preserve this issue for appellate review. For the reasons that follow, we reach the same conclusion with regard to Appellant's challenge to the trial court's standard instruction on constructive possession.

The record reveals that on direct examination, Ms. Deninno testified Appellant did not hand the controlled substance to her after she provided him with the buy money, but instead instructed her to reach into a compartment on the left-hand side of the steering wheel of the car he was driving and pick it up herself. N.T. 4/1/15 at 89-90. Appellant did not make a timely objection to this statement. **Id**. The trial court concluded that as the Commonwealth was required to prove Appellant knowingly or intentionally possessed cocaine under 35 P.S. § 780-113(a)(16), and that such possession may be proven by showing actual or constructive

possession, "[t]he factual scenario presented is exactly the type contemplated by the constructive possession jury instruction." Trial Court Opinion, filed 1/20/16, at 14.

Further review of the record confirms the trial court provided Appellant with three opportunities to request any "exceptions, corrections, or additions" to its charge to the jury before the jury retired to deliberate, although he did not do so. *See* N.T., 4/1/15, at 277, 280, 282. Because Appellant did not object to the trial court's constructive possession instruction, he has waived his challenge to the constructive possession instruction. *See* Pa.R.Crim.P. 647 (B); *see also Commonwealth v. Forbes*, 867 A.2d 1268, 1274 (Pa.Super. 2005) (finding appellant waived his challenge to the court's instruction on the elements of burglary where he did not object to that charge) (citing *Commonwealth v. McCloskey*, 835 A.2d 801, 812 (Pa.Super. 2003) (holding that a specific and timely objection must be made to preserve a challenge to a particular instruction; failure to object results in waiver)).

In his seventh and eighth issues, Appellant generally avers the evidence at trial was insufficient to support the convictions on all counts and that the verdicts were against the weight of the evidence, respectively. We conclude he has waived these issues for appellate review.

Issues not raised in a statement filed pursuant to Pa.R.A.P. 1925(b) are deemed waived for appellate review. *Commonwealth v. Castillo*, 585

Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998)). However, the mere inclusion of an issue in a 1925(b) statement is not sufficient to overcome waiver, for an appellant must state the assigned error with specificity in the concise statement in order for that issue to be addressed on appeal. ***Commonwealth v. Dowling***, 778 A.2d 683 (Pa.Super. 2001). By its plain text, Rule 1925(b) requires that concise statements "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii); ***see also Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa.Super. 2006) (stating "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review[]"). Our Supreme Court has made clear that Rule 1925(b) is a bright-line rule. ***Commonwealth v. Hill***, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011). This is so even where trial court guesses the issues and discusses them in 1925(a) opinion.

Additionally, when considering a generic allegation in the appellant's statement of matters complained of on appeal that "[t]he evidence was legally insufficient to support the convictions" this Court has stated:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. **Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt**.

Here, as is evident, Appellant not only failed to specify which elements he was challenging in his Rule 1925(b) statement, he also failed to specify which conviction he was challenging. Thus, we find Appellant's sufficiency claim waived on this basis.

***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa.Super. 2013) (internal quotation marks and citations omitted; emphasis added).

Instantly, Appellant's assertions in his Rule 1925(b) statement regarding the sufficiency and weight of the evidence presented at trial baldly question: "Whether the evidence was sufficient to support the convictions on all counts?" and "Whether the verdicts were against the weight of the evidence?" Appellant's Concise Statement of Matters Complained of on Appeal, 9/23/15, at ¶¶ J, K. These challenges lack clarity and sufficient specificity to enable a court meaningfully to address those claims. As such, these boilerplate allegations are vague and waived for appellate purposes. ***See Reeves****, supra*.

Appellant's final issue relates to the discretionary aspects of his sentence. Prior to considering this claim, we note that:

[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hoch****,* 936 A.2d 515, 517–18 (Pa.Super. 2007) (citation omitted).

The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal. *Id.* at 518. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence to determine: "(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265–66 (Pa.Super. 2014) (citations omitted).

Herein, Appellant filed a timely notice of appeal and has preserved this issue in a post-sentence motion. Appellant also has included a Pa.R.A.P. 2119(f) statement in his appellate brief. Therefore, we must next determine whether Appellant has raised a substantial question.

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Mastromarino*, 2 A.3d 581, 585–86 (Pa.Super. 2010) (citation omitted).

In his Rule 2119(f) statement, Appellant argues a substantial question exists "due to the trial court's failure to impose concurrent sentences on the deliver and CUCF charges since they all arose out of a continuing criminal transaction." Brief of Appellant at 19. This Court has stated that:

> the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. *Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa.Super. 2005) (citing *Commonwealth v. Hoag*, 445 Pa.Super. 455, 665 A.2d 1212, 1214 (1995)). Long standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa.Super. 2005) (citing *Commonwealth v. Graham*, 541 Pa. 173, 661 A.2d 1367, 1373 (1995)). A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. *Lloyd*, 878 A.2d at 873. "We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently." *Hoag*, 665 A.2d at 1214. *Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa.Super.2008) (citations modified).

*Commonwealth v. Zirkle*, 107 A.3d 127, 132-34 (Pa.Super. 2014), reargument denied (Feb. 17, 2015), *appeal denied,* 117 A.3d 297 (Pa. 2015).

This Court also has held that a sentence may be so manifestly excessive that it creates a substantial question. *Commonwealth v. Moury*, 992 A.2d 162, 171–72 (Pa.Super. 2010). When determining whether a substantial question has been raised, we have focused upon "whether the decision to sentence consecutively raises the aggregate sentence to, what

appears upon its face to be, an excessive level in light of the criminal conduct in this case." *Mastromarino*, 2 A.3d at 588 (quoting *Commonwealth v. Gonzalez–Dejusus*, 994 A.2d 595, 599 (Pa.Super. 2010)).

Appellant received an aggregate sentence of two (2) years to eight (8) years in prison. He was sentenced to one (1) year to four (4) years in prison on the Delivery of a Controlled Substance conviction and one (1) year to four (4) years on the Criminal Use of Communication Facility conviction to run consecutively thereto. His Possession of a Controlled Substance conviction merged with the Delivery of a Controlled Substance conviction and his six (6) month to twelve (12) month sentence on the Possession of Drug Paraphernalia charge ran concurrently to the delivery conviction. The trial court explained it imposed consecutive sentences for the Delivery of a Controlled Substance and the Criminal Use of Communication Facility convictions because each offense comprised a separate and distinct crime. Trial Court Opinion, filed 1/19/16 at 18. This sentence is not so manifestly excessive as to raise a substantial question in light of Appellant's criminal conduct. As such, we find Appellant has not raised a substantial question. *Zirkle*, 107 A.3d at 134.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/25/2016</u>